CAPITAL CITY LUMBER COMPANY, Plaintiff, vs. OLSON and others, Defendants.

OLSON and wife, Appellants, vs. LINDSAY, Respondent.

SMITH, Appellant, vs. LINDSAY, Respondent.

*April 8—May 11, 1926.*

*Covenants against incumbrances: In warranty deed: Do not cover acts of grantee: Deed given in fulfilment of land contract: Acts of executory vendee: Mechanics' liens: House erected by vendee: Sale to third party: Deed by original vendor to third party: Judgment of reformation unnecessary but not reversible.*

1. A covenant against incumbrances does not indemnify the grantee against incumbrances placed on the premises by himself.   p. 185.
2. Where the vendor in a land contract, at the request of all parties, gave, in fulfilment of the land contract, a deed to the purchaser's vendee, the rights of the parties were the same as though the vendor had deeded to the purchaser and the purchaser had deeded to his vendee, and the grantee in the deed takes it with constructive notice that a covenant against incumbrances therein did not include liens arising from the first purchaser's building operations.   p. 186.
3. A covenant against incumbrances runs with the land.   p. 186.

4. One to whom a lot was conveyed by the vendee in a land contract, who had started to build a house thereon, is bound to ascertain whether there were mechanics' liens on such house, and, if so, whether a covenant against incumbrances in the deed of the original vendor in fulfilment of the land contract applied to them.   p. 187.
5. Though a purchaser without notice will not be affected by a latent equity, deeds and mortgages are the subjects of reformation even as to subsequent grantees.   p. 188.
6. It is not necessary to adjudge reformation of a deed, given in fulfilment of a land contract, to exempt from the covenant against incumbrances those that have been created or suffered by the grantee; but such a decree is not improper in the sense that it should be reversed.   p. 188.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge.   *Affirmed.*

This action was brought to foreclose a mechanic's lien upon a certain lot in the city of Madison, originally owned by the defendant *W. T. Lindsay.*   There were cross-complaints by successive grantees praying for judgment against both immediate and remote grantors as and for breaches of covenants against incumbrances in the various deeds of conveyance constituting the chain of title, in the event that said mechanics' liens were valid against the interests of the respective defendants.   There was also a cross-complaint by *W. T. Lindsay* praying for a reformation of the deed executed by him so far as it related to the covenant against incumbrances.   The facts are as follows:

September 7, 1923, the defendant *Lindsay* contracted to sell the lot in question to the defendant Mink for the sum of $750.   Mink paid down $100, for which *Lindsay* gave his receipt, by the terms of which he agreed to convey the property upon the payment of the balance of $650 on or before February 1, 1924.   There is no question but that this receipt constituted a sufficient memorandum of the sale within the statute of frauds.   This, however, was not placed on record. Shortly thereafter Mink began the construction of a dwelling

house upon said lot.    On November 9th defendant Mink
contracted to convey said lot to defendant *Mae Smith* and
to complete the house he then had under construction on
said lot.    On December 10th, *Mae Smith* having paid the
consideration therefor, and being entitled to a deed of the
premises under her agreement with Mink, the defendants
*Lindsay,* Mink, and *Smith* met for the purpose of vesting
the title, which was still in *Lindsay,* in *Mae Smith.*    For the
purpose of avoiding what seemed to them an unnecessary
conveyance, it was agreed that *Lindsay* should convey di-
rectly to *Mae Smith.*    The deed so executed by *Lindsay* to
*Mae Smith* contained the usual covenant against incum-
brances.    There was no deed from *Lindsay* to Mink, or from
Mink to *Smith.*    Mink remained in possession of the prem-
ises until after May 1st, during all of which time the con-
struction of the dwelling house was in progress.    On April
24th *Mae Smith* conveyed the premises to the defendant
*Olson.*    Her deed of conveyance contained the usual cov-
enant against incumbrances.    The house was not yet com-
pleted.

The plaintiff furnished Mink with building material for
the construction of the house, and brings this action to fore-
close a mechanic's lien.    The defendant *Olson* filed a cross-
complaint against the defendant *Mae Smith* and the defend-
ant *Lindsay* for damages for breach of the covenants
against incumbrances in case plaintiff's claim be held a
valid lien against his interest.    The defendant *Mae Smith*
filed a similar cross-complaint against the defendant *Lindsay*
to recover damages upon the breach of his covenant against
incumbrances in case plaintiff's claim be held a valid lien
against her interest in the property, or in the event that she
be held liable to *Olson* upon her covenant against incum-
brances.    The defendant *Lindsay* filed a cross-complaint
praying a reformation of his deed to *Mae Smith* so that
the covenant against incumbrances therein should "except

liens or incumbrances created or suffered by the act of Gilbert F. Mink, who has a land contract on said premises."

The court rendered judgment in favor of the plaintiff upon its complaint in the nature of a foreclosure of the mechanic's lien, and entered judgment reforming the deed executed by *W. T. Lindsay* in accordance with the prayer of his cross-complaint. The defendant *Olson* and the defendant *Smith* appeal from that part of the judgment granting reformation of the *Lindsay* deed.

*L. C. Gunderson* of Madison, attorney, and *Geo. B. Parkhill* of Abbotsford, of counsel, for the appellants *Olson*.

For the appellant *Smith* there was a brief by *Sanborn, Blake & Aberg* of Madison, and oral argument by *W. J. P. Aberg*.

For the respondent *Lindsay* there was a brief by *Gilbert, Ela, Heilman & Raeder* of Madison, and oral argument by *Roman Heilman*.

OWEN, J. The sole question for determination is whether the court erred in granting reformation of the deed executed by *Lindsay* to *Mae Smith* so that the covenant against incumbrances therein should exclude liens or incumbrances created or suffered by the defendant Mink. Mink evidently purchased the lot in question for the purpose of constructing the house thereon; at least almost immediately after contracting for the purchase of the lot he commenced building operations. Sec. 289.01 of the Statutes expressly exempts the interest of *Lindsay* from liens growing out of the construction of the house by Mink. Had *Lindsay* executed the deed directly to Mink, the usual covenants of warranty against incumbrances would not have included any liens or incumbrances placed upon the premises by Mink or any liens arising by virtue of his building operations. The covenant against incumbrances does not indemnify the grantee against incumbrances placed upon the premises by himself. The

covenant against incumbrances is a covenant as to things existing at the time it is made. 7 Ruling Case Law, p. 1163, § 78. If broken at all, it is broken at the time it is made. *Estate of Hanlin,* 133 Wis. 140, 113 N. W. 411. *Lindsay* did not execute the deed to Mink, but he executed it to *Mae Smith.* He did this, however, by mutual agreement on the part of himself, Mink, and *Mae Smith* in fulfilment of and for the purpose of carrying out his contract with Mink. This constituted a substituted performance of the contract between *Lindsay* and Mink by and with the consent and agreement of all parties to the immediate transaction, and their rights are the same as they would have been had *Lindsay* deeded to Mink and Mink to *Mae Smith.* *Shockley v. Roelli,* 188 Wis. 564, 206 N. W. 856.

There may be some doubt as to whether *Mae Smith* knew the exact arrangement between *Lindsay* and Mink. She did know, however, that Mink was in possession of the premises, that he was building a house thereon, that he had some sort of a title, which title, to be complete, called for the execution and delivery of a deed by *Lindsay.* She knew that she was acquiring her title through Mink. She was chargeable with knowledge of the law which exempted *Lindsay's* interest in the lot from liens created thereon by Mink if Mink's interest therein was that of a land contract. All of these circumstances were sufficient to put her upon inquiry as to what Mink's real interest in the premises was, and whether *Lindsay's* covenant against incumbrances included the mechanics' liens in question, and charged her with constructive notice of the real situation. So far as *Mae Smith* is concerned, she accepted the deed from *Lindsay* with constructive notice that the covenant against incumbrances therein contained did not as a matter of law include any liens that might arise by reason of Mink's building operations. This settles the rights of *Mae Smith* in the premises.

Now what are the rights of the *Olsons?* It seems to be settled in this state that a covenant against incumbrances

runs with the land. *Estate of Hanlin,* 133 Wis. 140, 113 N. W. 411. The nature, scope, and extent of the covenant, however, does not change, broaden, or develop as it runs. The covenant is an agreement between the covenantor and his grantee. The scope and extent of the covenant is to be determined by the circumstances and the facts existing at the time the covenant is made and should be construed to express the understanding and agreement of the immediate parties to the covenant, and this is especially true where the record furnishes no evidence as to whether liens such as these were incumbrances upon the title which the grantor was conveying. It may be conceded that the *Olsons* knew that there was a covenant against incumbrances in *Lindsay's* deed. The records, however, furnished them no information as to whether the mechanics' liens here involved constituted an incumbrance upon his title. The situation of the premises put them upon inquiry as to whether there were outstanding liens. They purchased a lot upon which there was a house under construction. It was not yet completed. They knew that the claims of mechanics or materialmen might constitute a lien on the premises. These facts placed them upon inquiry concerning the true state of facts. If they were relying upon the covenant against incumbrances contained in *Lindsay's* deed, the investigation which it was their duty to make would have disclosed to them the fact that these liens never constituted an incumbrance upon *Lindsay's* title. Even though a *bona fide* purchaser might have relied upon the covenant in *Lindsay's* deed, the fact is they are not *bona fide* purchasers, and there is nothing to indicate that in purchasing these premises they relied upon the covenants, and the trial court expressly declared in a memorandum decision that they did not.

These considerations lead to the conclusion that it was unnecessary to grant judgment reforming the deed from *Lindsay* to *Smith.* However, were it otherwise, the judgment of reformation was eminently proper. While it is the

rule of equity that a purchaser without notice, actual or constructive, will not be affected by a latent equity, whether by lien, incumbrance, trust or fraud, or any other claim, the equity to reform an instrument stands on the same footing as any other equity. 23 Ruling Case Law, 340. Deeds and mortgages are frequently the subject of reformation, even as to subsequent grantees. 23 Ruling Case Law, 339 *et seq.;* notes in 65 Am. Dec. 481; 28 L. R. A. N. s. 785; *Fischer v. Laack,* 85 Wis. 280, 55 N. W. 398; *Drury v. Hayden,* 111 U. S. 223, 4 Sup. Ct. 405. Whether reformation will be granted depends upon the equities of the situation. In this case no equitable considerations protest against the judgment of reformation. On the other hand, to refuse reformation would work great injustice, if reformation were necessary to protect *Lindsay.* There is no justice in subjecting the defendant *Lindsay* to the burden of these mechanics' liens. Neither is there any reason nor equitable consideration for relieving either *Olson* or *Smith* from the burden of these liens at the expense of *Lindsay.* While the judgment of reformation entered is deemed unnecessary, it cannot be said to be improper in the sense that it should be reversed, and the judgment appealed from will be affirmed.

*By the Court.*—Judgment affirmed.

STEVENS, J., took no part.