BADGER SAVINGS BUILDING & LOAN ASSOCIATION, Respondent, vs. MUTUAL BUILDING & SAVINGS ASSOCIATION and others, Appellants.

*December 8, 1938—January 10, 1939.*

*John P. Retzer* of Milwaukee, for the appellants.

For the respondent there was a brief by *Orlaf Anderson,* attorney, and *Geo. H. Daum* of counsel, both of Milwaukee, and oral argument by *Mr. Daum.*

WICKHEM, J.   An understanding of the controversy here involved will be promoted by resort to the accompanying diagram.   Lots 1, 2, 3, and 26 as marked on this diagram are

in block 4 in Newbury Cornwall subdivision in the city of West Allis.   As originally platted on June 10, 1911, each lot was forty-six feet in width and one hundred thirty-five feet in depth.   As laid out in this plat, lots 1, 2, and 3 ran north and south and faced on West Vincent place.   Lot 26 ran east

and west and faced South Ninetieth street. The plat called for an alley fifteen feet wide between the south boundary of lots 1, 2, and 3, and the north boundary of lot 26. In 1927, the entire tract as well as several lots south of lot 26 not shown upon the map were owned by Adam and Tad Krezman, who were building contractors. Having built houses on most of the lots south of the alley, they made plans in 1927 to build on lots 1, 2, and 3, and in order to conform the houses on these lots to those already built to the south decided to face the proposed houses on South Ninetieth street and to lay out lots running east and west across the three lots. Each such lot was made up of portions of lots 1, 2, and 3. In connection with this scheme, the Krezmans dedicated the west sixteen feet of lot 3 for an alley which would run north and south and join an existing north-and-south alley in the rear of lot 26 and the other lots further south. Since they proposed to make lots 1, 2, and 3 into four lots, each with a frontage of thirty-seven and one-half feet, it was necessary in order to make sufficient frontage available that the existing east-and-west alley at the south of these lots be vacated. On June 14, 1927, the Krezmans petitioned the common council of West Allis that the alley be vacated. At this time they owned lot 26. The alley was vacated by resolution adopted September 20, 1927, but not recorded until March 4, 1936. In the meantime, on August 23, 1927, Krezman conveyed lot 26 to Arthur Becker. The Krezmans then laid out four thirty-seven and one-half-foot lots fronting on South Ninetieth street. Reference to the exhibit hereto annexed will show that the fourth lot to the south, in order to have thirty-seven and one-half feet of frontage, must include the entire fifteen feet of vacated alley. On December 1, 1927, Krezman conveyed to one Miller the thirty-seven and one-half-foot parcel, which was the second of the new lots south of West Vincent place. This was described in the deed as

the south thirty-seven and one-half feet of the north seventy-five feet of lots 1, 2, and 3, etc. On July 23, 1928, Krezman conveyed the most northerly lot to Harry Koceja. This was described in the deed as the north thirty-seven and one-half feet of lots 1, 2, and 3, etc. On July 25, 1928, the Krezmans mortgaged a parcel to the Mutual. This was described in the mortgage as the south thirty-seven and one-half feet *of lots 1, 2, and 3*. On August 8th, Krezman mortgaged to Badger a parcel described as the north thirty-seven and one-half feet of the south seventy-five feet *of lots 1, 2, and 3*. On September 8th, Krezman conveyed to defendants Buff the parcel described in the Badger mortgage. All of these descriptions excepted the west sixteen feet of lot 3 for use as an alley. On July 7, 1932, the Mutual obtained title by sheriff's deed to the south thirty-seven and one-half feet *of lots 1, 2, and 3* as the result of foreclosure proceedings. Both mortgages were to secure construction loans. Houses were erected upon each of the four thirty-seven and one-half-foot parcels, and the line of occupation in connection with each house as well as its location is indicated upon the diagram. The house for the construction of which the Badger mortgage was given is the third from the north of the newly laid-out lots, and the lot covered by the Mutual mortgage is the fourth from the north. In applying for permit to erect a building on the Badger lot, the parcel was described as the north thirty-seven and one-half feet of the *south sixty feet* of lots 1, 2, and 3, instead of the north thirty-seven and one-half feet of the *south seventy-five feet*. In the application for a permit to erect a building upon the Mutual premises, the parcel was described as the south twenty-two and one-half feet *of the south sixty feet*, instead of the south thirty-seven and one-half feet *of lots 1, 2, and 3*, set forth in the Mutual mortgage. At the time of placing the loans by Mutual and Badger, the houses were under construction and the parcels staked

out. The lots were so staked as to make four lots with a frontage of thirty-seven and one-half feet. Thus, the most southerly lot was staked to include all of the east-west alley, and the next lot to the north was so staked as to indicate a frontage of thirty-seven and one-half feet. The difficulty that gives rise to this litigation is that the alley was actually vacated after Krezman had sold lot 26 and the Mutual takes the position that seven and one-half feet of the vacated alley belongs to the owner of lot 26, leaving the Mutual premises only thirty feet of frontage.

It is quite evident in this case what the Krezmans intended to sell and what the Badger and Mutual thought they were getting. It was assumed by the Krezmans that the alley to the south of these lots could be included in the most southerly parcel in order to give that parcel a full thirty-seven and one-half feet of frontage. It was assumed by the Mutual that that was what they were getting. It was assumed by the Badger that they were getting the next lot to the north in accordance with the stakes indicating lines of occupation. The premises were inspected by each loan association while the buildings were under construction and after the lots were plainly staked. The trial court correctly concluded that there was no doubt as to what property each mortgagee was intended to get and supposed it was getting. The mistakes occurred in reducing to writing the intention of the parties. These mistakes arose naturally because the south boundary of these three lots would not, if reference was made to the plat, include the alley. It is perfectly apparent that Krezman supposed that he owned and was mortgaging to the Mutual a parcel which included the fifteen feet which had heretofore constituted the east-west alley, and that he supposed that he was mortgaging to the Badger the thirty-seven and one-half feet next immediately north of this parcel. The parties to the Badger mortgage supposed the description to be adequate

for this purpose. This was the mutual mistake. That all this was based upon an assumption by Krezman that he owned the entire alley would not impair the mutuality of the mistake, even if the assumption was wrong.

The next question is whether the Badger is precluded from the remedy of reformation because rights of the Mutual have so intervened as to make the relief inequitable. We are of the opinion that the trial court correctly held that since each mortgagee loaned in reliance upon actual inspections and not upon the plat, and since the understanding and intention was that each have a mortgage upon a parcel as staked and occupied, there was no such intervention of the rights of a third party as would make the relief inequitable. As a matter of fact, any other result would be open to serious objection. If the Mutual is to take according to its description, its house extends partly into the vacated alley and its north line runs through the house on the premises immediately to the north. If, as it suggested, it be given thirty-seven and one-half feet beginning at the center of the alley, it would take a parcel that neither it nor the grantor had or manifested any intention to receive or convey. See *Olson v. Lindsay,* 190 Wis. 182, 208 N. W. 891.

It is contended that the trial court erroneously declined to reform the mortgage of the Mutual or to give any relief upon its counterclaim. The contention cannot be sustained. This is a matter between the Mutual and its grantor. *Fischer v. Laack,* 85 Wis. 280, 55 N. W. 398. Since this issue affects the former alley, the owner of lot 26, who is not a party to this action, would appear to be a necessary party to any determination of it.

Defendant further contends that each deed being clear and unambiguous, parol evidence was inadmissible to establish mutual mistake. Defendant relies upon statements in *Kruse v. Koelzer,* 124 Wis. 536, 102 N. W. 1072, to the effect that

where a deed is unambiguous, parol evidence is not admissible for purposes of construction or interpretation. This is an elementary and well-established rule and the statement of it was made in connection with a subsidiary contention in the case with reference to interpretation. That the court had no intention of applying it to reformation is evidenced by the following excerpt (p. 543):

"The plaintiffs' suit for reformation is not brought upon the theory that parol evidence is admissible to explain the deed, but upon the theory that it is not. If parol evidence were admissible to explain or vary the terms of the deed, or show that other lands were intended to be conveyed, the plaintiffs would have no standing in a court of equity for reformation."

Parol evidence to establish fraud or mutual mistake in actions for reformation is universally admitted. If it were not, these remedies would be wholly unenforceable.

*By the Court.*—Judgment affirmed.